**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| SABINA VIDUNAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 13-CV-1746 |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY J.F. O'REILLY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

## OPINION

CONTI, Chief District Judge

## I.    INTRODUCTION

Pending before the court in this diversity action is a motion to dismiss the second amended complaint. (ECF No. 46.) Defendant Anthony J.F. O'Reilly ("defendant") argues plaintiff Sabina Vindunas ("plaintiff") failed to state a claim for breach of contract because the allegations in the second amended complaint contradict allegations in the original and amended complaints. The court previously held on the record in this case that dismissal of an amended complaint is not warranted because there are allegations in an amended complaint that contradict allegations in a previous version of the complaint. (H.T. 12/3/2014 (ECF No. 45) at 2-3.) Defendant did not meet his burden to show reconsideration of that decision is warranted in this case.

Defendant in the motion to dismiss also argues the allegations in the second amended complaint lack the specificity necessary to set forth a plausible claim for breach of contract.

Plaintiff in the second amended complaint alleges defendant promised to transfer to her two kinds of stock, i.e., shares of H.J. Heinz Company ("Heinz") stock and shares of Providence Resources PLC-ESM ("Providence") stock. Plaintiff's factual allegations in the second amended complaint are sufficient to plausibly state a claim that there was an oral contract between defendant and plaintiff with respect to the transfer of shares of Heinz and Providence stock, which was breached by defendant. Defendant's motion to dismiss will, therefore, be denied for the reasons stated herein.

## II. <u>PROCEDURAL HISTORY</u>

On December 6, 2013, plaintiff initiated this action by filing a three-count complaint asserting claims for: (1) breach of contract (count I); (2) breach of fiduciary duty (count II); and (3) violation of the Pennsylvania Wage Payment and Collection Law, 43 Pa. Cons. Stat. § 260.1 et seq. (count III). (ECF No. 1.) On January 29, 2014, defendant filed a motion to dismiss and brief in support of the motion in which defendant argued, among other things, that plaintiff "failed to allege even the most basic facts regarding the supposed promises from which her claims arise, including where they were made." (ECF Nos. 6, 7.) On April 22, 2014, the parties filed a joint stipulation that, among other things, counts II and III of the complaint would be dismissed with prejudice. (ECF No. 16.) On April 30, 2014, plaintiff filed a brief in opposition to the motion to dismiss count I. (ECF No. 22.) Plaintiff attached to the motion, among other things, an affidavit from the plaintiff and an affidavit from her husband. (ECF No. 22-1; ECF No. 22-2.) On May 7, 2014, defendant with leave of court filed a reply brief in support of his motion to dismiss. (ECF No. 25.) On May 23, 2014, the court on the record at a hearing granted defendant's motion to dismiss and granted plaintiff leave to amend to file an amended complaint. There were questions raised about whether plaintiff was asserting a claim for breach of contract

or breach of an oral trust agreement. The court reasoned that the complaint lacked sufficient detail about the alleged contract or oral trusts between plaintiff and defendant to satisfy the federal pleading standards, and refused to consider affidavits submitted by the parties at the motion to dismiss stage. On June 2, 2014, the court entered an order accepting the parties' stipulation dismissing counts II and III of the complaint with prejudice. (ECF No. 27.)

On June 23, 2014, plaintiff filed an amended complaint asserting one claim against defendant for breach of contract. (ECF No. 28.) On July 11, 2014, defendant filed a motion to dismiss the amended complaint and brief in support of the motion. (ECF Nos. 32, 33.) Defendant in its submissions argued plaintiff "fail[ed] to cure the deficiencies that led the Court to dismiss the first Complaint for failure to state a plausible claim for relief" and the amended complaint was "even more implausible" because of plaintiff's "vague and radically changed allegations that contradict[ed] both Plaintiff's prior Complaint and her previously submitted sworn Declarations." (ECF No. 33 at 2-3.) On August 18, 2014, plaintiff filed a response in opposition to the motion to dismiss, which she entitled a "reply," and a brief in support of the response. (ECF Nos. 36, 37.) On September 22, 2014, defendant with leave of court filed a reply brief in support of his motion to dismiss the amended complaint. (ECF No. 41.) On December 4, 2014, the court held a hearing with respect to defendant's motion to dismiss the amended complaint. The court granted defendant's motion without prejudice and permitted plaintiff until December 17, 2014, to file a second amended complaint.

On December 17, 2014, plaintiff filed a second amended complaint asserting one claim for a breach of contract. (ECF No. 44.) On December 31, 2014, defendant filed a motion to dismiss the second amended complaint and a brief in support of the motion. (ECF Nos. 46, 47.) On March 13, 2015, plaintiff filed a brief in opposition to the motion to dismiss. (ECF No. 51.)

The motion to dismiss the second amended complaint having been fully brief is now ripe to be decided by the court.

### III.   FACTUAL ALLEGATIONS IN THE SECOND AMEDNED COMPLAINT VIEWED AS TRUE FOR THE PURPOSE OF RESOLVING THE MOTION TO DISMISS

In or about December 1995, defendant, who was chairman and chief executive officer of Heinz, hired plaintiff to serve as his personal nurse. (ECF No. 44 at 2.) Plaintiff's duties were to monitor defendant's health, administer his medications, make arrangements with health facilities and for supplies for defendant during numerous lengthy trips, which he regularly took for business and pleasure, and other duties directly associated with providing defendant health care. (Id.) Plaintiff accompanied defendant on most of these trips to supply these services. (Id.)

As time went on, plaintiff was required to perform additional duties that were not related to defendant's health care. These duties included planning and scheduling defendant's calendar and making various travel arrangements related to defendant's frequent trips. (Id. at 3.) These duties required plaintiff to travel with defendant. (Id.) Plaintiff as a result of the trips was away from her home and family for long periods of time. (Id.) Plaintiff was required to perform other duties over the course of her employment relationship with defendant that were unsavory. (Id.) Plaintiff agreed to perform the unsavory duties because of defendant's promises to her with respect to pay and retirement benefits. (Id.)

In 1995, plaintiff assumed the duties of personal nurse without a specific agreement with respect to how much she was to be paid for her services. (Id.) Defendant at that time was recovering from a serious medical condition, and plaintiff waited a significant period of time before raising the issue of her pay. (Id.) Through 1996 and part of 1997, plaintiff attended to defendant on a full-time basis without a formal agreement with respect to her salary or benefits.

(Id.) Plaintiff provided on-demand, full-time nursing services and administrative services to defendant, including managing travel appointments, answering correspondence, and other clerical tasks. (Id.) During this time, plaintiff received lodging and meals, a small payment for her salary, and reimbursement for her expenses. (Id.) Plaintiff, defendant, and defendant's personal accountant had ongoing discussions with respect to a permanent employment agreement for plaintiff. (Id.) These discussions included the possibility of plaintiff becoming a Heinz employee with salary and fringe benefits to be paid by Heinz. (Id. at 3-4.) Defendant and his advisors concluded that plaintiff could not provide her services to defendant as a Heinz employee. The discussions with respect to plaintiff's employment focused on her being directly employed by defendant. (Id. at 4.)

In or about September 1999, a permanent salary agreement for plaintiff was finalized. (Id. at 7.) In 2000, defendant paid plaintiff $200,000. (Id.) From 2001 through 2007, defendant paid plaintiff $150,000 per year. (Id.) In 2008, plaintiff received a partial salary of $100,000. (Id.) In 2009, plaintiff received a salary of only $47,500. (Id.) In 2010, plaintiff's salary was unpaid. (Id.) Plaintiff throughout this time continued to perform all the duties pursuant to her agreement with defendant. (Id.)

In or around July 1997, the parties agreed that plaintiff would continue to work for defendant for at least five years after he retired from Heinz. In exchange, defendant would transfer 200,000 shares of Heinz stock to plaintiff when her employment services terminated. (Id.) The parties also agreed that defendant would hold[1] the shares of Heinz stock for plaintiff

---

[1]    The factual allegation that defendant agreed to hold the shares for plaintiff may implicate a claim for a breach of an oral trust agreement. This kind of claim was addressed in the previous hearings on the prior motion to dismiss. (H.T. 5/23/14 (ECF No. 29) at 3-6.) Because it is not clear whether plaintiff in the second amended complaint is asserting claims for both breach of contract and breach of an oral trust agreement, the court in the discussion will address whether either claim is stated in the second amended complaint.

until she ceased working for him. (Id.) There was no agreement regarding plaintiff's annual salary at this time. In or about July 1997, defendant confirmed with plaintiff's husband his promise to transfer the Heinz shares to plaintiff. (Id.) Defendant promised plaintiff and her husband that for each year plaintiff continued to work for defendant, he would put additional shares of Heinz stock aside for her as a Christmas bonus. (Id. at 5.)

In 1997, defendant, plaintiff, and plaintiff's husband traveled to defendant's residence in Ireland for the Christmas holidays. During that trip defendant reaffirmed his agreement to transfer 200,000 shares of Heinz stock to plaintiff when she ceased working for him. (Id.) Defendant also told plaintiff and her husband that he would increase the amount of shares that plaintiff would receive by increments of 5,000 at the end of each calendar year that she was employed by defendant. (Id.) The amount of incremental yearly additions to her Heinz account would increase by 1,000 shares for each year she worked for defendant. (Id.)

Plaintiff during her employment with defendant traveled with him to his home in Ireland for the Christmas holidays. (Id.) In most years, plaintiff's husband joined plaintiff and defendant in Ireland for approximately one week, and defendant, plaintiff, and her husband would travel from Ireland to the Bahamas to celebrate New Year's Eve. (Id.) While in Ireland, defendant, plaintiff, and her husband discussed the value of the stock that was promised to plaintiff. (Id.) Defendant told plaintiff and her husband how many shares were in her "account." (Id.) Defendant never provided plaintiff with stock certificates or any other indicia of ownership of the shares of Heinz stock. (Id. at 5-6.) Plaintiff understood that defendant controlled the shares of Heinz stock and that ownership would not be transferred until her employment with defendant was terminated. (Id. at 6.)

In or around December 1998, defendant promised plaintiff that he would increase the amount of shares to be transferred to her at the time of her termination of services by 6,000 shares. (Id.) In or around December 1999, defendant promised to increase the shares of Heinz stock to be transferred to her by 7,000 shares. (Id.) In September 2000, defendant retired as chair of the board for Heinz. (Id.) In or around December of that year, defendant promised to increase plaintiff's shares by 8,000 shares. (Id.) As further inducement for plaintiff to continue providing services, defendant promised plaintiff "that he was increasing the amount of H.J. Heinz common stock shares to be transferred to her at the time of her termination of services to him in the amount of 1,000 shares more than had been placed [sic] promised to her at the end of the previous calendar year." (Id.) For each calendar year from 2001 through 2009, defendant promised to transfer to plaintiff an additional 117,000 shares of Heinz stock, resulting in a cumulative total of 343,000 shares of Heinz stock. (Id. at 6-7.) The shares of Heinz stock were to be transferred to plaintiff upon the termination of her services to defendant. (Id. at 7.)

In addition to the Heinz shares, in or about 2005, defendant promised to transfer 500,000 shares of Providence stock to plaintiff and would increase the amount to be transferred by 500,000 shares in January of each year that plaintiff continued to be employed by defendant. (Id. at 8.) Defendant made this promise to plaintiff and her husband and told them that the shares of Providence stock would be transferred to plaintiff when her employment was terminated. (Id.) Defendant promised, and plaintiff understood and agreed, that the shares of Providence stock were in the nature of a "retirement" account. (Id.) "Retirement" would be at such time that plaintiff no longer provided services to defendant. (Id.)

Plaintiff continued to work for defendant in 2010, but defendant did not pay her a salary. (Id. at 9.) During 2010, defendant expected that plaintiff would remain on-call and available to

him for travel. Defendant expected plaintiff to provide services, including, but not limited to the following: (1) speaking to defendant and his staff regarding his medical issues; (2) coordinating his medical appointments and travel; and (3) receiving and processing invoices for payment on defendant's behalf. (Id.)

In 2011, plaintiff demanded that defendant transfer to her the shares of Heinz and Providence stock promised to her because she no longer was employed by defendant. (Id.) Defendant—to date—has refused to transfer to plaintiff the shares of Heinz and Providence stock or pay her the market value of the stock. (Id.)

## III.    STANDARD OF REVIEW

A motion to dismiss tests the legal sufficiency of the complaint. Kost v. Kozakiewski, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pleaded factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

<u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 556-57).

Two working principles underlie <u>Twombly</u>. First, with respect to mere conclusory statements, a court need not accept as true all the allegations in a complaint. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 663 (citing <u>Twombly</u>, 550 U.S. at 555). Second, to survive a motion to dismiss, a claim must state a plausible claim for relief. <u>Iqbal</u>, 556 U.S. at 679. "Determining whether a complaint states a plausible claim for relief will…be a content-specific task that requires the reviewing court to draw on its judicial experience and common sense. <u>Id</u>. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not 'shown' – 'that the pleader is entitled to relief.'" <u>Id</u>. (quoting FED. R. CIV. P. 8(a)(2)). A court considering a motion to dismiss may begin by identifying pleadings that are not entitled to the assumption of truth because they are mere conclusions. "While legal conclusions can provide the framework of the complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Iqbal</u>, 556 U.S. at 679.

## IV. <u>DISCUSSION</u>

Defendant in its motion to dismiss the second amended complaint argues:

(1) plaintiff was granted leave to amend for "the sole and specific purpose" of providing additional detail with respect to the alleged promises on which she seeks relief, but plaintiff included additional allegations "that have nothing to do the with alleged promises but rather appear to be designed to forestall a subsequent dismissal on the basis of the statute of limitations;"

(2) the second amended complaint contains allegations that contradict the allegations in the original and amended complaints; and

(3) "[p]laintiff still has not provided any additional detail with respect to the time or location of the alleged promises with respect to the Providence Resources PLC-ESM stock, which promise is still only generically pleaded to have occurred at some unspecified time 'in 2005' in some undisclosed location."

(ECF No. 47 at 2-3.) Each of defendant's arguments will be addressed below.

**A. Defendant argues that the second amended complaint impermissibly contains allegations designed to forestall a dismissal based upon the statute of limitations.**

With respect to defendant's first argument that the second amended complaint impermissibly contains allegations designed to forestall a dismissal based upon the statute of limitations, the court on the record at the hearing on December 3, 2014, permitted plaintiff to file a second amended complaint. The court discussed the deficiencies in the amended complaint explaining that it did not contain sufficient factual allegations about *when* and *where* defendant made promises to plaintiff. The inclusion of allegations in the second amended complaint with respect to the timing of the alleged promises made by defendant, i.e., *when* those promises were made, is not, therefore, a basis to dismiss the second amended complaint.

**B. Defendant argues the second amended complaint contains allegations that contradict the allegations in the original and amended complaints.**

Defendant in its second argument asks the court to reconsider its prior decision that contradictory allegations are not a basis to dismiss the complaint.[2] The purpose of a motion for

---

[2]     The court at the hearing held on December 3, 2014, was not persuaded by defendant's argument that the amended complaint should be dismissed because it contained factual allegations that were contradictory to the allegations in the original complaint. The court held:

reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir.1999). A motion for reconsideration under Federal Rule of Civil Procedure 59(e) must therefore rely on one of three grounds: (1) an intervening change in the law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice. N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir.1995). A motion for reconsideration is not properly grounded in a request for a district court to rethink a decision it has already rightly or wrongly made. Williams v. Pittsburgh, 32 F.Supp.2d 236, 238 (W.D.Pa.1998). Litigants are cautioned to " 'evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant.' " Waye v. First Citizen's Nat'l Bank, 846 F.Supp. 310, 314 n. 3 (M.D.Pa.1994) (quoting Atkins v. Marathon LeTourneau Co., 130 F.R.D. 625, 626 (S.D.Miss.1990). Motions for reconsideration should not relitigate issues already resolved by the court and should not be used to advance additional arguments which could have been made by the movant before judgment. Reich v. Compton, 834 F.Supp. 753, 755 (E.D.Pa.1993).

---

Now, with respect to the consideration of the change in positions or statements of facts, under the Federal Rule of Civil Procedure 8(d), pleadings can be inconsistent. They can have alternate statements; and if the same allegations that have been set forth in the original Complaint, even though they were inconsistent, it would not be a means for striking them so long as the pleadings were sufficient at least with respect to one of the alternate statements. So I don't think that's a basis for granting the motion to dismiss.

…

I have to only look at the Complaint that's in front of me, and what you would be asking me to do is to make credibility assessments about what actually happened and actually making determinations about the facts; and I don't think I can do that at a motion to dismiss.

(H.T. 12/3/2014 (ECF No. 45) at 2-3, 5.)

Defendant previously argued in this case that the amended complaint should be dismissed because plaintiff "omitt[ed] previously alleged factual details and add[ed] new contrary facts that contradict[ed] not only Plaintiff's allegations in her original complaint, but also the averments of the sworn Declarations that she previously submitted to the Court." (ECF No. 33 at 5.) Defendant incorporates that argument into his motion to dismiss the second amended complaint. Defendant argued that in the original complaint plaintiff alleged defendant promised to <u>immediately</u> place in trust for her shares of certain stock, which would be held for plaintiff until sometime in the future. (<u>Id.</u>) Defendant further argued that plaintiff's sworn declaration provided defendant promised to <u>immediately</u> place shares of stock for her in trust and informed plaintiff about the number and financial well-being of the shares being held for her. (<u>Id.</u> at 5-6.)

According to defendant, the allegations in the amended complaint (and now the second amended complaint) contradict the allegations set forth in the original complaint and plaintiff's sworn declaration. Defendant contends that plaintiff in the amended complaints "vaguely" asserts defendant promised to make "'yearly additions'" to her account, which was in the nature of a retirement account for plaintiff to use when she ceased working for defendant. (ECF No. 33 at 6 (quoting ECF No. 28 ¶ 11).) Defendant argues that plaintiff's breach of contract claim as stated in the original complaint is time barred by the applicable four-year statute of limitations. Defendant explains that plaintiff's claim is based upon defendant breaching a contract by failing to <u>immediately</u> transfer shares of stock to plaintiff's account, and those alleged breaches each occurred more than four years prior to the filing of the complaint. According to defendant, plaintiff's new allegations that defendant did not owe performance to plaintiff until sometime in the *near future*, i.e., when plaintiff ceased working for defendant, are designed to forestall dismissal of her claims based upon the four-year statute of limitations. Defendant argues the

second amended complaint should be dismissed because "[a] plausible claim simply cannot be based on a bed of factual contradictions." (ECF No. 33 at 7.)

The Third Circuit Court of Appeals in West Run Student Housing Associates, LLC v. Huntington National Bank, 712 F.3d 165 (3d Cir. 2013), held that dismissal of an amended complaint is not warranted simply because there are allegations in the amended complaint that contradict allegations set forth in the original complaint. The court of appeals in West Run commented that "[p]laintiffs routinely amend complaints to correct factual inadequacies in response to a motion to dismiss," and "[t]hat is even so when the proposed amendment flatly contradicts the initial allegation." Id. at 172. The district court in West Run considered allegations in the original complaint filed by the plaintiff to be binding judicial admissions and commented that "'a plaintiff is not permitted to take a contrary position in a complaint in order to avoid dismissal.'" Id. at 171 (quoting W. Run Student Housing Assocs., LLC, v. Huntington Nat'l Bank, Civ. Action No. 12-76, 2012 WL 1739820, at *6 (W.D. Pa. May 15, 2012)). The court of appeals rejected the reasoning of the district court and held that "at the motion to dismiss stage, when the district court typically may not look outside the four corners of the amended complaint, the plaintiff cannot be bound by allegations in the superseded complaint." Id. at 173. The court of appeals instructed that in order to consider the contents of the original complaint, the district court should have converted the motion to dismiss into a motion for summary judgment, and it vacated the judgment of the district court and remanded the case on that basis. Id. at 173.

The court of appeals in West Run found persuasive a decision from the Seventh Circuit Court of Appeals—Kelley v. Crosfield Catalysts, 135 F.3d 1202 (7th Cir. 1998). In Kelley, the plaintiff sued defendant under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et

seq. In the complaint, the plaintiff alleged that he took FMLA-leave to obtain custody of his children. The defendant filed a motion to dismiss the complaint arguing the plaintiff's reason for taking leave—to obtain custody of his children—was not a valid reason for FMLA-leave. The plaintiff filed an amended complaint and omitted the allegation that he took FMLA-leave to obtain custody of his children. The defendant argued the plaintiff was bound by his previous admissions. The Seventh Circuit Court of Appeals rejected the defendant's argument, and held:

> It is well-established that an amended pleading supersedes the original pleading; facts not incorporated into the amended pleading are considered functus officio. See Duda v. Board of Educ. of Franklin Park Pub. Sch. Dist. No. 84, 133 F.3d 1054, 1057 (7th Cir.1998); Wellness Community–Nat'l v. Wellness House, 70 F.3d 46, 49 (7th Cir.1995); Lubin v. Chicago Title & Trust Co., 260 F.2d 411, 413 (7th Cir.1958) ("It is hornbook law that an amended complaint complete in itself and making no reference to nor adopting any portion of a prior complaint renders the latter functus officio."); Nisbet v. Van Tuyl, 224 F.2d 66, 71 (7th Cir.1955) ("An amended pleading ordinarily supersedes the prior pleading. The prior pleading is in effect withdrawn as to all matters not restated in the amended pleading, and becomes functus officio.") (footnote omitted); see also 3 James Wm. Moore, et al., Moore's Federal Practice ¶ 15.17[3] (3d ed. 1997) ("An amended pleading that is complete in itself and does not reference or adopt any portion of the prior pleading supersedes the prior pleading."). If certain facts or admissions from the original complaint become functus officio, they cannot be considered by the court on a motion to dismiss the amended complaint. A court cannot resuscitate these facts when assessing whether the amended complaint states a viable claim.

Kelley, 135 F.3d at 1204-05. The court of appeals in West Run found the decision in Kelley "particularly instructive because it considered the question presented in [the] appeal under nearly identical procedural circumstances." West Run, 712 F.3d at 172. The Third Circuit Court of Appeals also commented that the holding in Kelley was "consistent with how other courts of appeals have treated the issue." Id. (citing InterGen N.V. v. Grina, 344 F.3d 134, 144-45 (1st Cir. 2003); Huey v. Honeywell, Inc., 82 F.3d 327, 333 (9th Cir. 1996); Hibernia Nat'l Bank v. Carner, 997 F.2d 94, 101 (5th Cir. 1993)).

In this case, the court—in light of <u>West Run</u>—cannot discern any basis upon which to reconsider its decision that dismissal of an amended complaint is not warranted simply because the amended complaint contains allegations that contradict allegations in the original complaint. The Third Circuit Court of Appeals has clearly instructed that a plaintiff is not bound by allegations in a superseded complaint; rather, allegations in a previous version of the complaint become "'*functus officio*,'"[3] and "'cannot be considered by the court on a motion to dismiss the amended complaint.'" <u>West Run</u>, 712 F.3d at 172 (quoting <u>Kelley</u>, 135 F.3d at 1204). To the extent the allegations set forth by plaintiff in the second amended complaint contradict the allegations set forth by plaintiff in the original complaint, the contradictions have no legal effect on the court's resolution of the motion to dismiss presently pending before the court.

The alleged contradictions, including the alleged contradictions in plaintiff's sworn affidavit, however, are not without any legal relevance. The court in <u>West Run</u> explained:

> This is not to say, however, that a party's assertion of contrary factual positions in the pleadings is without consequence. A superseded pleading may be offered as evidence rebutting a subsequent contrary assertion. <u>See</u> <u>Giannone</u>, 238 F.2d at 547; <u>see also</u> <u>InterGen</u>, 344 F.3d at 144–45; 188 LLC, 300 F.3d at 736; <u>Huey</u>, 82 F.3d at 333; <u>Andrews v. Metro N. Commuter R.R. Co.</u>, 882 F.2d 705, 707 (2d Cir.1989); <u>Raulie v. United States</u>, 400 F.2d 487, 526 (10th Cir.1968). For example, at the summary judgment stage, a district court may consider a statement or allegation in a superseded complaint as rebuttable evidence when determining whether summary judgment is proper. <u>See</u> <u>188 LLC</u>, 300 F.3d at 735–36.
>
> …
>
> We note that the original complaint, filed in state court, was verified as true and correct under penalty of perjury by Russell P. Mills, the manager of West Run. Although the fact that the original complaint was verified does not alter the principle that an amended complaint will supersede the original, <u>see</u> <u>King v. Dogan</u>, 31 F.3d 344, 346 (5th Cir.1994) (per curiam), that verification places a

---

[3]     Black's Law Dictionary defines "functus officio" as "[h]aving fulfilled the function, discharged the office, or accomplished the purpose, and therefore of no further force or authority." BLACK'S LAW DICTIONARY FREE ONLINE LEGAL DICTIONARY 2ND ED., http://thelawdictionary.org/functus-officio/ (last visited on Sept. 3, 2015).

heavy burden on Plaintiffs to explain why the number of pre-sold units was incorrect.

We also note that although complaints filed in federal court are usually not verified by the parties, Rule 11 of the Federal Rules of Civil Procedure requires an attorney to certify that a pleading "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and that "the factual contentions have evidentiary support." Fed.R.Civ.P. 11(b)(1), (3).

West Run, 712 F.3d at 172-73. Although the alleged contradictions in the second amended complaint are not relevant to the resolution of the motion to dismiss, defendant may choose to refer to the allegedly inconsistent factual allegations at a later stage in the proceedings.

Defendant cites to West Run in its brief in support of the motion to dismiss the amended complaint. Defendant argues that the holding of West Run is not applicable to this case because: (1) "West Run involved an alleged factual error in the original pleading;" and (2) "the amended pleading [in that case] was made of right under Rule 15 and not as here by Court leave with clear directions." (ECF No. 33 n.5.) Defendant is correct that the plaintiff in West Run argued the contradictory allegations were based upon an alleged error made in the original complaint. The omission made in Kelley, a decision upon which the Third Circuit Court of Appeals relied, however, was not based upon an alleged error. The plaintiff in Kelley omitted from the second amended complaint facts that may have caused the dismissal of his claims under the FMLA. The contradictions in the pleadings in the decisions from the other courts of appeals cited by West Run were also not the result of "errors." InterGen, 344 F.3d at 144 ("InterGen plausibly attributes its revised pleadings to information gleaned during pretrial discovery."); Huey, 82 F.3d at 333 (defendant admitted in its answers to plaintiff's first and second amended complaints that plaintiff was a "just case employee," but later amended its answers to deny the allegation); Hibernia, 997 F.2d at 101 (plaintiff originally alleged that defendant's liability was limited to

five percent, but amended the complaint to allege defendant was liable for twelve and one-half percent). The court of appeals in West Run recognized that plaintiffs "routinely" amend complaints to avoid dismissal, which is exactly what defendant argues plaintiff did in this case. Defendant's argument that West Run is not applicable to this case because the alleged contradictions in that case were a result of an "error" is, therefore, unpersuasive.

Defendant did not explain why the outcome in West Run would have been different if the plaintiff amended its complaint with leave of court rather than as a matter of right. The rule set forth in West Run, i.e., "[a]n amended complaint invalidates any legal effect of the original complaint 'unless the amended complaint specifically refers to or adopts the earlier pleading,'" has been applied by district courts without any qualifier that the amendment must be made as a matter of course rather than with leave of court. Glover v. Udren, Civ. Action No. 08-990, 2014 WL 6682461, at *6 (W.D. Pa. Nov. 25, 2014) (quoting West Run, 712 F.3d at 172); see also Vallejo v. United States, Civ. Action No. 13-5455, 2015 WL 4653212, at *6 n.4 (D.N.J. Aug. 6, 2015); Nayak v. Voith Turbo Inc., Civ. Action No. 14-1053, 2015 WL 1605576, at *20 (M.D. Pa. Apr. 9, 2015); Rosa-Diaz v. Dow, Civ. Action No. 14-05, 2015 WL 1061165, at *4 (W.D. Pa. March 10, 2015); Robertshaw v. Pudles, Civ. Action No. 11-7353, 2014 WL 1788850, at *3 (E.D. Pa. May 6, 2014). Defendant's attempts to distinguish West Run and argue that its holdings and rationale are inapplicable to this case fail to convince the court that it should reconsider its decision that plaintiff's allegedly contradictory factual allegations in an amended complaint warrant dismissal of the second amended complaint.[4]

### C. Defendant argues plaintiff did not set forth factual allegations sufficient to state a plausible claim for relief.

The court at the hearing on December 3, 2014, commented:

---

[4]     In Kelley, the plaintiff filed its second amended complaint with the consent of the defendant and not as a matter of right. Kelley, 135 F.3d at 1203.

> Now, with respect to the facts alleged in the Amended Complaint, we've been over with the parties the Iqbal and Twombley [sic] standards, that when the Court looks at a Complaint, the Court views the factual allegations to see if they're sufficient to give rise to a plausible inference that there is a claim stated, and mere conclusions are not acceptable. And the Complaint was still somewhat deficient. It had some general references to periods of time when certain conversations took place.
>
> But when the declarations came in, they were specific enough that the Court could see that if there was one more Amended Complaint, it could pass muster with respect to the allegations about where the promises were made, time references for those. And so my initial assessment is that the Plaintiff will be given one more time and one more time only to do the Amended Complaint.
>
> …
>
> But with respect to when the promises were made, where they were made, the husband's affidavit was particularly detailed with respect to that information. So that I know would pass muster.[5]

(H.T. 12/3/2014 (ECF No. 45) at 3.) Plaintiff incorporated into the second amended complaint the details in the affidavit submitted by plaintiff's husband. Those details provide information about *when* and *where* defendant allegedly made promises to plaintiff about her compensation with respect to the shares of stock in Heinz. For the reasons set forth on the record at the December 3, 2014 hearing, the second amended complaint "passes muster" under Iqbal and Twombly with respect to the shares of Heinz stock allegedly promised to plaintiff by defendant.

---

[5]    Counsel for defendant at the hearing stated that if plaintiff filed another amended complaint, he would file another motion to dismiss based upon plaintiff's contradictory and insufficient factual allegations. (H.T. 12/3/2014 (ECF No. 45) at 8-9.) The court responded:

> I don't want to rehash these motions to dismiss. This is the second one. If they put in the facts to give you the where, the when, who else was present, that in my judgment would be sufficient to pass muster.
>
> Then you can attack them -- I mean if there was -- each year was a separate contract, but I'd have to see how it would unfold. But at this stage I think we need to move on. The case is old enough now. It's got to start to move.
>
> …
>
> I can't preclude [defendant] from filing another motion to dismiss. [Defendant has] a right to do that, but I've given a foreshadowing of what the outcome would be. So it's up to [defendant] to determine whether [he] want[s] to continue to press that or not.

(Id. at 9.)

The additional allegations set forth in the second amended complaint, i.e., the allegations about when and where defendant allegedly made promises to plaintiff and her husband, are sufficient to plausibly support a claim that defendant intended to transfer the shares of Heinz stock to plaintiff to access upon termination of her services.

Defendant argues that "[p]laintiff still has not provided any additional detail with respect to the time or location of the alleged promises with respect to the Providence" stock. (ECF No. 47 at 3.) Plaintiff in the second amended complaint alleges that:

> In addition to the shares of H.J. Heinz stock that O'Reilly promised would be transferred to Plaintiff at the time that she terminated her services for him, as an additional inducement to Plaintiff to continue performing her services for him, in 2005 O'Reilly promised that he would transfer 500,000 shares of Providence Resources PLC-ESM stock to her for each year that she continued to work for him, until the time of her termination of services for him.
>
> …
>
> O'Reilly made the promise of yearly increments of 500,000 shares of Providence Resources stock to Plaintiff and her husband Michael, and told them that he would make such additions of Providence Resources stock each January that she continued to work for him. Consistent with O'Reilly's promises to transfer Heinz stock to Plaintiff at the time that she ceased performing services for him, he promised that the Providence Resources stock would also be transferred to her after she ceased performing services services [sic] for him.
>
> …
>
> During the yearly discussions with Plaintiff and her husband [sic] O'Reilly repeated his promises to increase the amount of shares that she would receive upon terminating her services to him. O'Reilly promised, and Plaintiff understood and agreed, that such shares were in the nature of a retirement account. "Retirement" would be at such time that Plaintiff was no longer providing services to O'Reilly.
>
> …
>
> O'Reilly agreed that the transfer of shares to Plaintiff for her use would occur at the time of the termination of services.

(ECF No. 44 ¶¶ 27-30.) In the second amended complaint, plaintiff asserts that there were yearly discussions in Ireland over the Christmas holidays when defendant discussed with plaintiff and her husband the number of shares in her "account." (Id. ¶ 20.) The foregoing allegations are sufficient—at this stage of the litigation—to plausibly show that defendant entered into an oral

contract with plaintiff to transfer shares of Providence stock to plaintiff upon termination of services to him.

A plaintiff asserting a breach of contract claim under Pennsylvania law must "establish [three] elements: '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract [,] and (3) resultant damages.' " <u>Ware v. Rodale Press, Inc.</u>, 322 F.3d 218, 225 (3d Cir.2003) (quoting <u>CoreStates Bank, N.A. v. Cutillo</u>, 723 A.2d 1053, 1058 (Pa.Super.Ct.1999)). The factual allegations in the second amended complaint are sufficient to plausibly show: (1) a contract existed between plaintiff and defendant, i.e., defendant promised to transfer to plaintiff shares of stock in consideration for plaintiff providing services to defendant; (2) defendant breached his duty to transfer to plaintiff the shares of stock upon termination of her services to him; and (3) plaintiff incurred damages in the amount of the shares of stock she did not receive from defendant. Under those circumstances, defendant's argument that the factual allegations in the second amended complaint do not satisfy the pleading standards set forth in <u>Iqbal</u> and <u>Twombly</u> lacks merit.

To the extent plaintiff in the second amended complaint is asserting that defendant agreed to hold the stock for her, it may be argued that the breach of contract claim is a claim for breach of an oral trust agreement. If so, the factual allegations set forth in the second amended complaint are sufficient to plausibly show the creation of an oral trust and its breach. Under Pennsylvania law, evidence of an oral trust—which this case arguably involves—must be "'clear, precise, and unambiguous.'" <u>In re Kresge</u>, 467 B.R. 776, 780 (M.D. Pa. 2012) (quoting <u>Policapro v. Policarpo</u>, 189 A.2d 171, 172 (Pa. 1963)). The evidence to establish the existence of an oral trust must be of the "'highest probative value.'" <u>Masgai v. Masgai</u>, 333 A.2d 861, 865 (Pa. 1975); <u>Sechler v. Sechler</u>, 169 A.2d 78, 81 (Pa. 1961). "The standard to be utilized in

determining the existence of an 'oral' trust was set forth by…[the Pennsylvania] Supreme Court in <u>Keller v. Keller</u>, 41 A.2d 547, 548-49 (Pa. 1945). <u>In re Hanley</u>, 452 A.2d 1360, 1365-66 (Pa. Super. Ct. 1982). The Pennsylvania Supreme Court in <u>Keller</u> explained:

> A trust in personal property may be established by parol evidence: <u>In re Williams' Estate</u>, 349 Pa. 568, 570, 37 A.2d 584; <u>Gribbel v. Gribbel</u>, 341 Pa. 11, 13, 17 A.2d 892. The burden of establishing the existence of the trust was upon appellant. Admittedly, this burden cannot satisfactorily be met by pointing to failure of a defendant to disprove the existence of the trust: <u>In re Heffner's Estate</u>, 134 Pa. 436, 444, 19 A. 693. While no particular form of words or conduct is necessary for the creation of a trust, language or conduct and a manifestation of an intention to create the same must be proven by evidence which is sufficiently clear, precise, and unambiguous: <u>Brubaker v. Lauver</u>, 322 Pa. 461, 463, 185 A. 848; <u>Bair v. Snyder County State Bank</u>, 314 Pa. 85, 89, 171 A. 274. See Restatement, Trusts, section 24(2). In reviewing the evidence to determine the existence of a trust the situation of the settlor and the beneficiary, financial and otherwise, their relation to each other as well as the purpose for which the trust was created, and circumstances under which it is to be administered must be given due consideration. All the evidence and surrounding circumstances must be considered as an entirety; isolated facts and circumstances are ofttimes misleading and do not present a true picture.

<u>Keller</u>, 41 A.2d at 548-49. The court in <u>In re Hanley</u> explained that the intent of the party allegedly creating the trust "must be determined as of the date of the creation of the purported trust." <u>Hanley</u>, 452 A.2d at 1366. The Supreme Court of Pennsylvania has held that pleadings that do not "disclose any date, place, or to whom the declarations were made" with respect to the creation of an oral trust are not sufficient to sustain a claim for the creation of an oral trust. <u>In re Wallace's Estate</u>, 174 A. 397, 398 (Pa. 1934). The court in <u>Peters Creek United Presbyterian Church v. Washington Presbytery of Pennsylvania</u>, 90 A.3d 95 (Pa. Commw. Ct. 2014), has explained:

> "In order for a court to find that a trust has been created, there must exist in the record clear and unambiguous language or conduct evidencing the intent to create a trust. No particular form of words or conduct is required to manifest the intention to create a trust. Such manifestation of intention may be written or spoken words or conduct indicating that settlor intended to create a trust." <u>Beaver–Butler</u>, 507 Pa. at 268–69, 489 A.2d at 1324–25 (quoting <u>Bair v. Snyder</u>

County State Bank, 314 Pa. 85, 89, 171 A. 274, 275 (1934)). "It is not necessary that the terms 'trust' and 'trustee' should be used. The donor need not say in so many words, 'I declare myself trustee,' but he must do something which is equivalent to it, and use expressions which have that meaning." In re Smith's Estate, 144 Pa. 428, 435–36, 22 A. 916, 917 (1891). See also In re Thompson's Estate, 416 Pa. 249, 206 A.2d 21 (1965) (following In re Smith's Estate); St. James the Less, 585 Pa. at 450, 888 A.2d at 809 (explaining that no form of terminology is necessary to create a trust, nor is the absence of the word "trust" controlling).

Nevertheless, lack of formality does not obviate the necessity for the appearance of all the elements of a completed trust. Beaver–Butler, 507 Pa. at 268–69, 489 A.2d at 1324–25 (quoting Bair, 314 Pa. at 89, 171 A. at 275). Every trust symptom must be present, regardless of informality surrounding the inception of the relationship. A trust cannot arise from loose statements admitting possible inferences consistent with other relationships, like a lease or a license. Id. In conducting this inquiry, the primary focus must be on the intent of the settlor at the time of the creation of the alleged trust. Id. (citing Restatement (Second) of Trusts § 23). See also St. James the Less, 585 Pa. at 446, 888 A.2d at 806 ("[A]ccording to well-established legal principles governing trusts, courts may only find a trust exists where there is clear and unambiguous language or conduct indicating that the settlor intended to create a trust.") (citing cases). The intent of the settlor at the time of the creation of a trust may be shown by facts that occur after that time. Matter of Krebs, 334 Pa.Super. 635, 483 A.2d 919, 921 n. 1 (1984); Restatement (Second) of Trusts § 4.

Peters Creek, 90 A.3d at 110.

The following elements must be present for an express trust to exist under Pennsylvania law: (1) an express intention to create a trust; (2) an ascertainable res; (3) a sufficiently certain beneficiary; and (4) a trustee who "owns" and administers the res for the benefit of the beneficiary.

In re Brockway Pressed Metals, Inc., 363 B.R. 431, 440 (W.D. Pa. 2007). The factual allegations in the second amended complaint and the reasonable inferences that may be drawn in favor of plaintiff are: (1) defendant intended to hold shares of stock for plaintiff; (2) the res of the trust was shares of Heinz and Providence stock; (3) plaintiff was a beneficiary of the trust; and (4) defendant owned and administered the shares of the Heinz and Providence stock for plaintiff. Plaintiff, therefore, plausibly alleged in the second amended complaint that defendant created a trust for plaintiff containing shares of Providence stock.

As discussed above, the intent of the person creating the trust at the time the trust was created is of utmost importance in determining whether an oral trust exists between the parties. Plaintiff in the second amended complaint alleges—among other things—that she worked for defendant as his personal nurse since 1995, performed duties for him, was not paid a consistent salary, defendant in 2005 promised to transfer to her and her husband 500,000 shares of Providence stock for plaintiff's use upon her termination of services, and that he would add shares each January as long as she continued to work for him. The shares to be transferred were "in the nature of a retirement account." (ECF No. 44 ¶ 29.) There were discussions in Ireland during the Christmas holidays among defendant, plaintiff, and plaintiff's husband about the number of shares in the account. Those allegations are sufficient to support a plausible claim that defendant intended to create a trust for plaintiff to access upon her retirement. Plaintiff must if she claims a breach of an oral trust agreement—at a later stage in this case—prove the existence of the oral trust with clear, precise, and unambiguous evidence. At this stage, the allegations in the second amended complaint are sufficient to plausibly show that defendant intended to create a trust for plaintiff, the res was the shares of Heinz and Providence stock, and defendant breached his promise to her to deliver the contents of the trust to her upon her retirement.

Because the second amended complaint contains sufficient allegations for the court to conclude that there are plausible claims for breach of contract and breach of an oral trust agreement, defendant's motion to dismiss will be denied.

IV.     **CONCLUSION**

For the reasons stated herein, defendant's motion to dismiss the second amended complaint (ECF No. 46) will be DENIED. An appropriate order will be entered.

BY THE COURT,

Dated: September 4, 2015
/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Chief United States District Judge